# In the United States Court of Federal Claims

No. 12-689V
(Filed Under Seal: March 4, 2015)[1]
(Filed for Publication:  March 19, 2015)

* * * * * * * * * * * * * * * * * * * * * * * * * *
* 
**AMANDA GUERRERO,**                        *
                                           *       **National Vaccine Injury Act; 42 U.S.C. §**
               **Petitioner,**             *       **300aa-15(e); Attorneys' Fees and Costs;**
                                           *       **Inadequate    Explanation    of    Fee**
        **v.**                             *       **Reduction; Remand.**
                                           *
**SECRETARY OF**                           *
**HEALTH AND HUMAN SERVICES,**             *
                                           *
             **Respondent.**               *
                                           *
* * * * * * * * * * * * * * * * * * * * * * * * * *

Lisa A. Roquemore, Law Offices of Lisa A. Roquemore, 19200 Von Karman Avenue, Suite 500, Irvine, CA, 92612, for Petitioner.

Joyce R. Branda, Rupa Bhattacharyya, Vincent J. Matanoski, Voris E. Johnson, Jr., Lara A. Englund, United States Department of Justice, Civil Division, Torts Branch, P.O. Box 146, Benjamin Franklin Station, Washington, D.C., 20044, for Respondent.

_____

## OPINION

_____

**WILLIAMS**, Judge.

This vaccine injury case comes before the Court on Petitioner's Motion for Review of the Special Master's decision reducing Petitioner's award of attorneys' fees from $38,114 to $25,535.90.  Because the Special Master reduced compensable hours by one-third without adequate explanation, the Court remands this matter.[2]

_____

[1]      Pursuant to Vaccine Rule 18 of the Rules of the United States Court of Federal Claims, the Court issued its opinion under seal to provide the parties an opportunity to submit redactions. Neither party filed proposed redactions.  Accordingly, the Court publishes this opinion.

[2]      The Special Master reduced the number of compensable hours for the attorney, the paralegal, and the expert.  Petitioner does not challenge the reduction of the expert's fee.

## Background

On October 11, 2012, Petitioner Amanda Guerrero filed a petition under the National Vaccine Injury Act, alleging that she developed Guillain-Barré syndrome ("GBS") after receiving an influenza vaccine on September 22, 2011.  Along with her petition, Petitioner filed 534 pages of medical records and an expert report.  Petitioner's attorney commenced pre-petition work on her case almost seven months earlier, on February 21, 2012, including "reviewing medical records, drafting a medical record summary, fully analyzing the facts . . . consulting and advising the client, identifying challenges to the case, consulting with an expert, drafting the petition and declaration in support and analyzing the damages."  Mot. for Review 2.  Respondent does not contest Petitioner's characterization of her counsel's pre-petition work.

Petitioner represents that "[a]n expert report was filed in support of the petition due to various complications in the case, without which 'reasonable basis' [a prerequisite for award of attorneys' fees under 42 U.S.C. § 300aa-15(e) if the petitioner is not awarded compensation] may have been questioned." [3]  Id.  These "complications" included two other possible causes for her GBS—infections with the cytomegalovirus and the Epstein-Barr virus.

Following the filing of the petition, the parties engaged in settlement discussions, and "conditionally resolved" the case on April 3, 2013, over a year after Petitioner's counsel began work on the case and roughly six months after the petition was filed.  Id. at 3.  The case was resolved without any status conferences, and Respondent did not file a Vaccine Rule 4 report.  Petitioner was awarded a lump sum compensation payment of $165,000.

Petitioner filed her application for fees and costs on November 26, 2013, seeking $752.31 in costs, $38,114 in attorney and paralegal fees, and $17,000 in expert costs.  The fees were based on 89.3 hours of attorney work at a rate of $355 per hour, and 51.3 hours of paralegal work at $125 per hour.  Respondent objected, arguing that the fees and costs were excessive.  Petitioner's attorney's billing statements for the requested $38,114 in fees are not included in the record on her Motion for Review.

The Special Master found that the amount of fees Petitioner sought was unreasonable, based on a comparison of Petitioner's claimed fees with his compilation of median fees and costs in Vaccine Act cases of similar procedural complexity.  Opinion of the Special Master (SM Op.) 7.  The Special Master did not cite any precedent for this construct and did not identify the cases from which he derived the medians.  The Special Master identified four categories of cases for his scale of procedural complexity, stating:

> Cases that are appealed after a hearing sit at the highest end of the spectrum, as they will usually have higher attorneys' fees than cases that are resolved without an appeal.  Cases that are resolved after experts testify at a hearing, but without an appeal, fall in the middle.  Cases with typically still less attorneys' fees are those in

---

[3]     The Vaccine Act provides for the recovery of attorneys' fees when the petition was brought in good faith and there was a reasonable basis for the claim.  Cloer v. Sec'y of Health & Human Servs., 675 F.3d 1358, 1359 (Fed. Cir. 2012).

which the parties retain experts but the case settles without a hearing.   Cases at the lowest end are those that resolve even without an expert report.

Id. at 3.  Here, the Special Master focused on two of those categories:  what he characterized as group one—cases in which no expert report was filed and no hearing took place—and group two—cases in which an expert filed a report but no hearing took place.   The Special Master stated:

> The submission of an expert report usually moves the case to the next level of procedural complexity.  Obtaining an expert report usually (but not always) occurs after the special master has conducted many status conferences during which the special master may have informally guided the parties.  See Vaccine Rule 5.  After a petitioner obtains an expert report, there is usually a status conference to discuss the strengths and weaknesses of that report.  If the special master identifies gaps or deficiencies, the special master will often direct the petitioner to obtain a supplemental report.  If the petitioner's expert report adequately summarized the expert's opinions and discloses all the bases for those opinions, then the special master orders the Secretary to retain an expert to respond.  Afterward, there is another opportunity for submitting supplemental reports.  Finally, as the case is proceeding to a hearing, the attorneys may be required to submit pre-trial briefs.  All these steps increase the amount of attorneys' fees and costs.

Id. at 3-4.

For groups one and two, the Special Master calculated the median for fees and costs combined, and then the medians for fees and costs separately.   The Special Master described the group one median calculations as follows:

> The median is derived from information from more than 70 cases.  The median components [costs and fees broken out separately] are derived from more than 50 cases.  In approximately 20 cases, information about the breakdown of fees versus costs is not available.  See, e.g., Schmitz v. Sec'y of Health & Human Servs., No. 12-473V, 2013 WL 5631238 Fed. Cl. Spec. Mstr. Sept. 23, 2013 (awarding $14,251.57 in attorneys' fees and costs in a flu vaccine / GBS case based upon the parties' settlement agreement).

Id. at 3 n.2.  The median award the Special Master identified for group one attorneys' fees and costs was $17,500, or, if analyzed separately, $17,000 in fees and $2,000 in costs.[4]  The Special

---

[4]      The Special Master found that the sum of the separate fee and cost median calculations did not match the median calculation of fees and costs together because "the parties provided

Master provided no explanation for how he calculated the median award for group two.  The Special Master did not state the number of cases underlying his median for group two.  The Special Master found that the median award for group two was $35,500 for attorneys' fees and costs combined,[5] or $26,000 for attorneys' fees and $8,000 for costs, separately.

Comparing Petitioner's case to his group one and group two cases, the Special Master found that the procedural complexity did not warrant the hours Petitioner's counsel and paralegal spent.  The Special Master found that Petitioner's case "resembles a group one case more than a group two case," because of the length of time the case was pending, and the fact that there were no status conferences, supplemental expert reports, or pre-trial briefs.  Id. at 6.  Petitioner argued that her case was medically complex "because her medical records identified two other possible causes for her GBS, an infection with the cytomegalovirus ('CMV') and an infection with the Epstein Bar virus ('EBV')."  Id. at 10.  The Special Master apparently agreed with Petitioner regarding medical complexity, stating:

> The CMV infection demonstrates that, sometimes, a procedurally simple case hides within it a medically challenging case.  Thus, it was reasonable for Ms. Roquemore to spend some additional time, including time with Dr. Steinman preparing a report.

> On the other hand, Ms. Guerrero cannot assume that the procedurally simple cases to which her case is being compared were also medically simple.  The median values presented in this decision come from dozens of cases reflecting a range of medical complexity.

Id. at 11.  The Special Master did not identify these cases, or describe the nature or range of medical complexity to which he referred.[6]  The Special Master noted, however, that he would not penalize Petitioner for retaining an expert, and therefore credited her $2,201 for attorneys' fees representing 6.2 hours "for assisting with the preparation of Dr. Steinman's report."  Id.

The Special Master concluded:

> For cases of this complexity, petitioners routinely request and are awarded fees in the $10,000 to $20,000 range.  Even allowing for the retention and work with Dr. Steinman, the present fee request is almost double that range.  It is unreasonable.

---

different data used to determine median total award, the median attorneys' fees, and the median amount of costs."  SM Op. 4 n.3.

[5]     The Special Master stated that the attorneys' fees and costs median for group two was $35,500 in the discussion on page 4 of his Opinion, but listed the median as $34,500 in the table of median values on page 7.  The Court uses the number in the discussion.

[6]     The Special Master identified one case he used in his median analysis by name as an example of a case in which a breakdown of fees versus costs was unavailable.

> In the undersigned's experience, an experienced and efficient
> attorney could have accomplished the same result in Ms.
> Guerrero's case by spending about half as much time. However,
> the undersigned is cognizant that the reasonable number of hours
> encompasses a range and that a number at the higher end of the
> reasonable range is still within the reasonable range, that is, a high
> number may still be reasonable. In addition, as acknowledged
> above, Ms. Roquemore should be compensated for all her work in
> retaining Dr. Steinman in this case [6.2 hours], even though such
> efforts may not be viewed as reasonable in other flu vaccine / GBS
> cases. Consequently, the undersigned exercises discretion to
> reduce the overall number of hours by one-third.

Id. at 12. In all, the Special Master awarded fees for 59.83 attorney hours at a rate of $355 per hour, and 34.37 paralegal hours at a rate of $125 per hour, totaling $25,535.90.

Petitioner sought review of the Special Master's reduced attorney fee award in this Court on October 7, 2014, arguing that the Special Master applied a legally erroneous median test, and that his decision lacked sufficient specificity. Petitioner also seeks attorneys' fees for this Motion for Review.

### Discussion

### Jurisdiction and Standard of Review

Jurisdiction lies in this Court pursuant to 42 U.S.C. § 300aa-12(e) (2014). In reviewing a decision rendered by a special master, this Court may: (1) uphold the findings of fact and conclusions of law; (2) set aside any findings of fact or conclusions of law "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or (3) "remand the petition to the special master for further action in accordance with the court's direction." Id. § 300aa-12(e)(2)(A)-(C). Findings of fact are reviewed under the "arbitrary and capricious" standard, legal questions are reviewed under the "not in accordance with law" standard, and discretionary rulings are reviewed under the "abuse of discretion" standard. Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1033 (Fed. Cir. 1994) (quoting Munn v. Sec'y of Health & Human Servs., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992)).

### Standard for Awarding Attorneys' Fees

Special masters are obligated to determine and award "reasonable attorneys' fees" in Vaccine Act cases. 42 U.S.C. § 300aa-15(e) (2014). To calculate such fees, the Federal Circuit has endorsed the lodestar method. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347 (Fed. Cir. 2008). Under the lodestar method, the Special Master would first determine an initial estimate of reasonable fees by multiplying the number of hours reasonably expended times a reasonable hourly rate. Id. at 1347-48. "Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings." Id. at 1348. "[T]he statute leaves it to the special master's discretion to find what constitutes reasonable fees," and thus "the standard of review for the determination of reasonable attorneys'

fees is abuse of discretion." Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356 (Fed. Cir. 2011).

"[T]o permit this court to perform its review function and determine whether any abuse of discretion occurred, the special master must provide an appropriate description of the relevant experience and the reasoning that she used, based on that experience, to reach her conclusions." Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 486 (1991). Special masters "need not, and indeed should not, become green-eyeshade accountants" when awarding attorneys' fees and costs. Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). However, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination." Perdue v. Kenny A., 559 U.S. 542, 558 (2010).

## The Motion for Review

Petitioner contends that the Special Master committed legal error and abused his discretion by creating a median test to assess Petitioner's fee request and failing to provide adequate specificity to allow meaningful review. The Court finds that the Special Master failed to adequately explain the basis for his reduction of Petitioner's requested fee award.

### The Special Master Failed to Adequately Support His Reduction of Petitioner's Counsel's Fees

#### Counsel's Hourly Rate

In assessing the reasonableness of Petitioner's request for attorneys' fees, the Special Master considered both the hourly rate and number of hours. Although the Special Master ultimately used Petitioner's requested hourly rates for the attorney and paralegal to calculate his fee award, the Special Master never stated whether he determined that those rates were reasonable. Cf. Masias v. United States, 634 F.3d 1283, 1291-92 (Fed. Cir. 2011) (affirming the finding of the special master that the requested rate was unreasonable based upon a detailed analysis of relevant affidavits, including an affidavit submitted by petitioner's counsel and a thorough review of rates previously awarded to the same petitioner's attorney and to practitioners in similar localities); see generally Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381 (Fed. Cir. 2011). In the decision, the Special Master appeared to take issue with counsel's requested rate of $355 per hour. The Special Master found that the rate resulted in an award that would be 42% higher than that of an attorney billing the same number of hours at $250 per hour—the low end of a range suggested by Petitioner for comparison. The Special Master concluded that Petitioner's counsel's "hourly rate does not explain everything problematic about her requested fees." SM Op. 9. Because the Special Master did not make a finding about the reasonableness of the requested rates, it is unclear whether, or to what extent, the Special Master's apparent concern regarding Petitioner's counsel's rates factored into his overall fee reduction here. As explained below, in this Court's view, Petitioner's counsel's hourly rate is reasonable and should not form a basis for reducing her fee award.

**Counsel's Hours**

**The Reduction of Fees Based Upon Unspecified Overbilling and Inefficiencies**

The Special Master failed to adequately explain why he reduced Petitioner's requested attorney hours by one-third.  The Special Master found that Petitioner's counsel "spent an unreasonable amount of time on a multitude of tasks to the effect that small incremental charges contributed to a submission in which Ms. Guerrero's fee request exceeds median fee awards by a large margin."  SM Op. 12.  The Special Master did not identify any of the referenced "multitude of tasks" or "small incremental charges," cite any instance of overbilling, or identify a time period when billing levels were inappropriate in light of the tasks done.

Further, while the Special Master concluded that a significant portion of Petitioner's counsel's fees reflected inefficiencies, he failed to identify any specific inefficiencies.  The Special Master stated:

> <u>Something</u> for which Ms. Roquemore is charging 0.3 hours can be reasonably accomplished in 0.1 hours.  <u>Something</u> for which she is charging 1.0 hours can be reasonabl[y] accomplished in 0.3 hours.  <u>Something</u> for which Ms. Roquemore spent 0.5 hours may have been redundant and, therefore, unnecessary.  It would take a long time to identify all the places, and it is neither required nor appropriate to expend the judicial resources to do so.

<u>Id.</u> (emphasis added).  The Special Master did not identify any task he characterized as "something" that was an excessive or redundant charge even by way of example.

While the Special Master was not required to conduct a line-by-line analysis of the attorney's bills, he was required to state why he determined discrete tasks, categories of tasks, or components of attorney time to be noncompensable.  Reduction of fees "must be explained clearly . . . and reasonably based on the documents and facts of the particular case."  <u>Gruber v. Sec'y of Health & Human Servs.</u>, 91 Fed. Cl. 773, 793 (2010).  The Special Master relied on <u>Saxton v. Secretary of Health and Human Services</u>, citing the Federal Circuit's statement that "[i]t was well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done."  3 F.3d 1517, 1521 (Fed. Cir. 1993).  However, as the Federal Circuit recognized in <u>Saxton</u>, the special master there "pointed to specific examples of overbilling," and compared counsel's fees with those of the five other law firms that handled multiple vaccine cases.  <u>Id.</u> at 1518-19.  Here, the Special Master did not explain how he quantified the percentage reduction he applied to counsel's hours—a significant reduction of one-third.

Decisions employing percentage reductions "are subject to heightened scrutiny."  <u>Int'l Rectifier Corp. v. Samsung Elecs. Co.</u>, 424 F.3d 1235, 1239 (Fed. Cir. 2005) (quoting <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1400 (9th Cir. 1993)).  The Special Master must provide a "concise but clear" explanation for reducing a fee award so that an appellate tribunal is able to assess whether there has been an abuse of discretion.  <u>See Int'l Rectifier</u>, 424 F.3d at 1239.  For example, in <u>Presault v. United States</u>, the Court declined to award fees for a discrete task—work

on a recusal motion, which the Court found to be based on "numerous blatant factual errors" that "impugn[ed] the integrity of the court, distort[ed] the record, and misrepresent[ed] the proceedings that have occurred." 52 Fed. Cl. 667, 678-80 (2002). Because the attorney invoices did not provide sufficient detail to identify every time entry that reflected work on this task, the Presault Court found that a percentage reduction was necessary. Id. at 681. The Presault Court also found instances of excessive billing due to seven changes in counsel of record which resulted in duplicative efforts, and quarter-hour billing practices which allowed overbilling because of a lack of precision. Id. at 680. Based on these specific identified problems in the fee request, the Presault Court reduced the plaintiffs' fee request by 20%. Similarly, in Town of Grantwood Village v. United States, the Court found that a supplemental fee request, where over half of the hours related to drafting an attorneys' fee petition, sought "an unreasonable amount, especially considering that plaintiff had already requested reimbursement for part of its attorneys' fees in its original request." 55 Fed. Cl. 481, 488-89 (2003). And in Cloverport Sand & Gravel Company v. United States, the Court reduced the fee by 10% because 14 attorneys billed time on a relatively uncomplicated inverse condemnation action, indicating a duplication of effort. 10 Cl. Ct. 121, 121, 125 (1986).

### The Reduction of Fees Based Upon an Unsupported Median Fee Award Comparison

In contrast to these cases where the trial tribunal examined specific aspects of the particular fee request under review, the Special Master here derived median fee awards from other vaccine cases based upon procedural complexity and compared the medians to Petitioner's fee request. The Special Master articulated the following rationale for focusing on procedural complexity:

> Generally, the procedural complexity of a case corresponds to the amount of attorneys' fees. See Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381, 1385 (Fed. Cir. 2011) (case difficulty is reflected by the reasonable number of attorney hours expended).

SM Op. 3 (emphasis added). "Case difficulty" does not, however, necessarily equate to "procedural complexity." In Rodriguez, the Federal Circuit found that the Laffey and Adjusted Laffey matrices[7] should not be used to calculate fees for Vaccine Act cases, because these matrices apply to "complex federal litigation," which differ from streamlined Vaccine Act cases. 632 F.3d at 1384-85. However, the Rodriguez Court neither recognized "procedural complexity" as a paramount consideration for assessing the amount of attorneys' fees, nor

---

[7]     The Department of Justice maintains "a schedule of rates . . . to compensate attorneys prevailing in 'complex federal litigation,'" commonly referred to as the Laffey Matrix. Rodriguez, 632 F.3d at 1383. The Laffey Matrix originated in Laffey v. Northwest Airlines, where the District Court of the District of Columbia considered a matrix listing the hourly rates for lawyers of differing experience levels. 572 F. Supp. 354, 371 (D.D.C. 1983) aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). "The adjusted Laffey matrix . . . grows at the rate of inflation in the legal services component of the national CPI." Thomas v. District of Columbia, 908 F. Supp. 2d 233, 248 (D.D.C. 2012).

sanctioned categorization of cases for purposes of fee awards based on the level of procedural complexity.

In his median fee construct, the Special Master divided vaccine cases into two groups of procedural complexity—group one, cases without an expert or hearing, and group two, cases where an expert report was filed but there was no hearing. The Special Master provided scant information supporting the median comparator fees. As to group one, the Special Master derived the median fee award from "more than 70 cases," but failed to identify those cases, or provide information as to their substance or medical complexity. SM Op. 3 n.2. The Special Master provided no information as to how the median fee award for group two was calculated, not even the sample size, and offered no observation as to the substance or medical complexity of those cases.[8]

In concluding that this case lacked "procedural complexity," the Special Master cited the absence of status conferences, pretrial briefs, and a Rule 4 report, as well as the resolution of the case within nine months. However, the fact that Petitioner's initial filing spurred Respondent to immediately engage in settlement discussions, fostering a resolution of the case in nine months without the need for status conferences and filings, could be seen as a positive attribute of Petitioner's counsel's lawyering, rather than as a basis to cut fees.

Additionally, in response to Petitioner's arguments, the Special Master appeared to recognize that this case was medically complex, stating:

> Some evidence supports Ms. Guerrero's position, particularly regarding CMV [cytomegalovirus]. She tested positive for antibodies associated with a CMV infection, and her doctors considered reactivation of the CMV infection as a potential cause for her neurologic problems. The CMV infection demonstrates that, sometimes, a procedurally simple case hides within it a medically challenging case. Thus, it was reasonable for Ms. Roquemore to spend some additional time, including time with Dr. Steinman preparing a report.

Id. at 11 (internal citations omitted). However, the Special Master did not account for medical complexity in determining the fee award. Instead the Special Master stated: "Ms. Guerrero cannot assume that the procedurally simple cases to which her case is being compared were also medically simple. The median values presented in this decision come from dozens of cases reflecting a range of medical complexity." Id.

The Special Master cited no cases in which a court or special master had used a similar median-fee-award construct to assess the reasonableness of hours expended. Instead, the Special Master cited Broekelschen v. Secretary of Health and Human Services, 102 Fed. Cl. 719 (2011), for the proposition that "the median values of attorneys' fees awards in cases comparable to Ms. Guerrero's case are an appropriate point for analysis." SM Op. 8. In Broekelschen, the Court of

---

[8]     Further, the Special Master assigned this case to group one—cases without an expert report or hearing—even though Petitioner did file an expert report.

Federal Claims affirmed this Special Master's comparison of a petitioner's fee award with fee awards in similar cases.   102 Fed. Cl. at 732-33.   However, there, this Special Master first separately considered the hours expended before the special master, the Court of Federal Claims on the motion for review, a panel of the Federal Circuit, a request for rehearing en banc, and before the special master on the fee dispute.   Broekelschen v. Sec'y of Health & Human Servs., No. 07-137V, 2011 U.S. Claims LEXIS 1154, at *16 (Fed. Cl. Spec. Mstr. June 3, 2011).   In each time period, the Special Master considered the specific activities counsel and a paralegal performed, including details such as the number of pages in the filings.   Id. at *17-32.   Based on those activities, the Special Master articulated whether the fee requests in each time period were reasonable, and if not, why he was reducing the fees.   Only after this analysis did the Special Master turn to his comparison to "see whether any award of attorneys' fees in Dr. Broekelschen's case was within the ballpark."   Id. at *33.   Citing five cases identified by the Secretary as "roughly comparable" because they too involved an appeal to the Federal Circuit on entitlement, the Special Master found that his reduced award exceeded the highest amount awarded in those cases.   Id.   The comparative analysis approved in Broekelschen is a different species than the Special Master's median-fee-award comparison here.

In sum, the Special Master's median fee comparison with Petitioner's counsel's requested fee, as it was described in the Opinion, does not provide a basis for this Court to assess whether the Special Master's reduction of fees was rational or an abuse of discretion.   As such, the Court remands this matter to the Special Master.

### Fees for this Motion

Petitioner seeks $16,211.20 in attorneys' fees and costs incurred in the preparation of her Motion for Review.   The requested amount represents 43.2 hours of attorney work at a rate of $365 per hour, 3.4 hours of paralegal work at a rate of $125 per hour, and $18.20 in costs. Respondent argues that this Court should decline to award any fees, contending that this appeal is frivolous, and that Petitioner spent over $16,000 on an appeal that would only recover $12,500.[9]   Respondent does not offer an alternative argument disputing any components of the fees sought.

The Vaccine Act empowers this Court to award compensation in an amount to cover reasonable attorneys' fees and other costs incurred in a Vaccine Act case.   42 U.S.C. § 300aa-15(e)(1); see also Vaccine Rule 43(b) ("Following review by an assigned judge of a special master's decision on attorney's fees and costs under Vaccine Rule 13, a request for any additional fees and costs relating to such review may be decided either by the assigned judge or by the special master on remand.").   In light of this Court's adjudication of Petitioner's Motion for Review and familiarity with the arguments of counsel, it is appropriate for this Court to address Petitioner's requested attorneys' fees and costs incurred in this proceeding.   See Hocraffer v. Sec'y of Health & Human Servs., No. 99-533V, 2011 U.S. Claims LEXIS 2361 (Fed. Cl. Nov. 22, 2011) (awarding requested fees for preparation of a motion for review).

---

[9]   Respondent also states that "petitioner indicates that she intends to ask this Court to award her an additional $16,211.20 in attorneys' fees and costs."   Resp. 13.   However, Petitioner in fact requested the additional fees in her Motion for Review.   Mot. for Review 21 ("Petitioner hereby seeks an additional amount of . . . **$16,211.20** for work spent on preparing this Motion for Review." (emphasis in original)).

In determining whether Petitioner's counsel's requested fee award is reasonable, this Court uses the lodestar method, multiplying the number of hours reasonably expended times a reasonable hourly rate, and then assessing whether an upward or downward adjustment is warranted based on other specific findings.  Avera, 515 F.3d at 1348.  The time sheets submitted by Petitioner with this Motion reflect attorney time of 43.2 hours spent reviewing and analyzing the Special Master's decision, researching cases on fee awards, consulting with peers regarding fee awards, and drafting a 22-page Motion for Review setting forth several bases for reversal of the Special Master's decision.  Petitioner's paralegal spent 3.4 hours assisting in the preparation and filing of this Motion.

Upon consideration of the Special Master's Opinion, the research required for the Motion and arguments articulated, the Court finds that the number of hours Petitioner's attorney and paralegal expended on the Motion for Review were reasonable.  Cf. Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2013 U.S. Claims LEXIS 214, at *50 (Fed. Cl. Spec. Mstr. Mar. 1, 2013) (awarding compensation for 50 hours for time spent researching, writing, and editing a motion for review of a fee application).

As to Petitioner's counsel's hourly rate of $365, the Court considers the rates in Washington D.C. for practitioners within the Vaccine Program.  See Avera, 515 F.3d at 1348.  In 2009, in Masias v. Secretary of Health and Human Services, the special master considered hourly rates of several attorneys in the Vaccine Program, and found that a "reasonable range for attorneys with ten or more years of experience providing services in the Vaccine Program in Washington, D.C. is $250 to $375 per hour."  No. 99-697V, 2009 U.S. Claims LEXIS 281, at *70 (Fed. Cl. Spec. Mstr. June 12, 2009).  In 2014, in Tieu Binh Le v. Secretary of Health and Human Services, the special master adjusted the range approved in Masias for inflation, to find that a reasonable range for experienced attorneys in the Vaccine Program was $275 to $413 per hour.  No. 07-895V, 2014 U.S. Claims LEXIS 839, at *13 (Fed. Cl. Spec. Mstr. July 31, 2014) (citing Barrett v. Sec'y of Health & Human Servs., No. 09-389V, 2014 U.S. Claims LEXIS 465, at *12 (Fed. Cl. Spec. Mstr. May 14, 2014)).

Petitioner's counsel is clearly experienced in Vaccine Act cases.  Petitioner's counsel was compensated at a rate of $355 per hour in Broekelschen v. Secretary of Health and Human Services, No. 07-137V, 2012 U.S. Claims LEXIS 354, at *26 (Fed. Cl. Spec. Mstr. February 21, 2012).  In an earlier decision in Broekelschen, this Special Master found that a rate of $340 was appropriate for Petitioner's counsel because she "is among the best attorneys representing petitioners in this Program."  No. 07-137V, 2008 U.S. Claims LEXIS 399, at *11 (Fed. Cl. Spec. Mstr. Dec. 17, 2008); see also Mueller v. Sec'y of Health & Human Servs., No. 06-775V, 2010 U.S. Claims LEXIS 403, at *5 (Fed. Cl. Spec. Mstr. May 27, 2010) (awarding Petitioner's counsel $345 per hour and stating "[b]ased upon the undersigned's experience with Ms. Roquemore in several litigated cases and in a very complex mediation, the undersigned agrees completely with my colleague's comments" in Broekelschen that Petitioner's counsel is among the best attorneys representing petitioners in the Vaccine Program).  Further, Petitioner's requested rate is within the range of reasonable rates for experienced attorneys in the Vaccine Program.

Petitioner requests $365 per hour here, a $10 per hour increase from what she requested from the Special Master in this case for work performed in 2012 and 2013.  This increase is a reasonable amount to account for inflation.  See, e.g., Hall v. Sec'y of Health & Human Servs.,

93 Fed. Cl. 239, 243-44 (Fed. Cl. 2010) (affirming a special master's decision that increased rates by $10 a year between 2006 and 2008 to account for inflation).   Petitioner's paralegal rate of $125 per hour was approved in <u>Broekelschen</u>, 2008 U.S. Claims LEXIS 399, at *11-12.  The Court finds that Petitioner's requested rates are reasonable, as well as her minimal copying costs. In this Court's view, there are no particular circumstances that warrant an upward or downward adjustment of the reasonable fees and costs.

## <u>Conclusion</u>

The Court vacates the Special Master's award of attorneys' fees and remands this matter to the Special Master for a redetermination of the fee award consistent with this Opinion and a clear and concise explanation of the fee award.  <u>See</u> <u>Int'l Rectifier</u>, 424 F.3d at 1239.

Petitioner is awarded interim fees in the amount of $16,211.20 for her attorney and paralegal fees and costs related to this Motion for Review.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**JUDGE**