# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *    *
AMANDA GUERRERO,                         *
                                         *    No. 12-689V
                Petitioner,              *    Special Master Christian J. Moran
                                         *
v.                                       *    Filed: May 22, 2015
                                         *
SECRETARY OF HEALTH                      *    Attorneys' fees and costs;
AND HUMAN SERVICES,                      *    reasonable number of hours;
                                         *    decision on remand.
                Respondent.              *
                                         *
* * * * * * * * * * * * * * * * * * *    *
```

Lisa A. Roquemore, Law Offices of Lisa A. Roquemore, Irvine, CA, for Petitioner.
Lara A. Englund, United States Dep't of Justice, Washington, DC, for Respondent.

## PUBLISHED DECISION ON REMAND AWARDING ATTORNEYS' FEES AND COSTS[1]

     This matter has returned to me after remand from the Court of Federal Claims.  After awarding Ms. Guerrero compensation, I awarded her $48,779.61 in attorneys' fees and costs.  Fees Decision, 2014 WL5335301 (Fed. Cl. Spec. Mstr. Sept. 23, 2015).  I reduced the amount requested because Ms. Guerrero's attorney, Lisa Roquemore, had charged an unreasonable amount of time and failed to exercise billing judgment.  Ms. Guerrero filed a motion for review.  The Court found the explanation for the reductions to be inadequate, vacated the Fees Decision, and remanded for additional explanation.  Opinion, 2015 WL 1275384 (Mar. 4, 2015).

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions ordered by the special master will appear in the document posted on the website.

After remand, I have reviewed the timesheets on a line-by-line basis. A detailed analysis shows that a reasonable amount of attorneys' fees and costs is $50,073.71.

## I.      Standards for Adjudicating Fee Applications

Attorneys present their fee application by seeking an hourly rate that is multiplied by the time spent. See Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008). Because the Vaccine Act authorizes special masters to award only "reasonable" attorneys' fees, special masters may revise attorneys' submissions either by decreasing the hourly rate, decreasing the number of hours, or both. E.g. Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283 (Fed. Cir. 2011).

Special masters are authorized to consider their past experiences with attorneys in the Vaccine Program. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d at 1517, 1521 (Fed. Cir. 1993); Wasson v. Sec'y of Health & Human Servs., 988 F.2d 131 (Fed. Cir. 1993) (unpublished). I have awarded attorneys' fees and costs more than 300 times and, thus, have experience in determining how much time professionals spend in prosecuting actions in the Vaccine Program.

## II.     Analysis

The two factors of the lodestar amount are a reasonable hourly rate and a reasonable number of hours. See Avera, 515 F.3d at 1348 (description of lodestar analysis). These factors are reviewed separately.

### A.      Reasonable Hourly Rate

Ms. Guerrero requested that Ms. Roquemore be compensated at the rate of $355 per hour for work performed from 2012 through 2014. Fee Exhibit 2 (initial set of timesheets); Fee Exhibit 24 (supplemental timesheets). I used this amount in awarding compensation. Fees Decision, 2014 WL 5335301, at *5.

In awarding attorneys' fees for the motion for review, the Court increased Ms. Roquemore's hourly rate to $365. Opinion, 2015 WL 1275384, at *8-9. However, after remand, Ms. Guerrero has not requested a retroactive increase. See order, issued Mar. 17, 2015 (memorializing status conference in which petitioner declined to submit any additional materials).

Thus, I, again, compensate Ms. Roquemore at an hourly rate of $355 and her paralegal at an hourly rate of $125.

### B.      Reasonable Number of Hours

The guiding principle for evaluating an attorney's request to be paid from the Vaccine Injury Compensation Trust Fund is whether the activities are "reasonable."  42 U.S.C. § 300aa–15(e).  Quoting a decision by the United States Supreme Court, the Federal Circuit has explained some of the limits on the number of hours for which compensation may be sought:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended." … Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

Saxton, 3 F.3d at 1521 (emphasis in original) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983)).

The principle that attorneys must exercise judgment in submitting a request for attorneys' fees has two ramifications that are especially important in evaluating the fee application here.  First, activities that a paralegal can perform should be billed at a paralegal rate, regardless of whether an attorney or paralegal actually performed the work.  "If counsel elects to have an attorney perform [clerical] activities, it is in counsel's discretion.  However, the time spent by an attorney performing work that a paralegal can accomplish should be billed at a paralegal's hourly rate, not an attorney's."  Riggins v. Sec'y of Health & Human Servs., No 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. denied, (Dec. 10, 2009), aff'd, 406 Fed. Appx. 479 (Fed. Cir. 2011).  Second, activities that are "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989).  Attorneys may not separately charge for clerical or secretarial work because those charges are overhead for which the hourly rate

accounts.  See Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

In her initial application for attorneys' fees, Ms. Guerrero requested compensation for 89.3 hours of Ms. Roquemore's time and 51.3 hours of paralegal time.  For ease of organization, I am dividing the litigation into five components.

Within each component, I have reviewed the proposed charges on a line-by-line basis.  Although the Court recognized that this method is not required, Opinion, 2015 WL 1275384, at *5, I choose to adopt this method to communicate the reasons for each reduction.  While the basis for each reduction is provided in the sections below, every activity is not discussed.  Ms. Roquemore and her paralegal performed many activities that are not controversial and, therefore, not discussed in the following sections.

### 1.     From Initial Client Communication to Filing the Petition

Ms. Roquemore's participation began on February 21, 2012, when Ms. Guerrero's mother inquired about a possible claim that the influenza vaccine caused her daughter's Guillain-Barré syndrome.  This phase lasted until October 12, 2012, when Ms. Roquemore's office submitted the petition for filing.  In this phase, Ms. Roquemore has charged 46.9 hours for her work and 33.4 hours for paralegal work.  Fee Exhibit 2 at 6-18.

On March 21, 2012, Ms. Roquemore sent an email, received an email, and sent an email regarding medical records.  She charged six minutes for each of the three tasks.  In my experience, attorneys frequently delegate the collection of medical records to paralegals.  The legal skills that justify the high hourly rate that attorneys can charge are not used in checking to see whether the client has submitted medical records.  Turpin v. Sec'y of Health & Human Servs., No. 99-535V, 2008 WL 5747914, at *6 (Fed. Cl. Dec. 23, 2008) (citing cases finding that collecting medical records is a paralegal task).  Furthermore, a relatively short email conversation does not take 18 minutes.  Thus, I take away 0.3 hours from Ms. Roquemore's time and add 0.2 hours to the paralegal's time.

By April 5, 2012, Ms. Roquemore had received six sets of medical records, including the most important set of records, the ones from UCLA.  On April 5, 2012, the paralegal prepared these records for Ms. Roquemore's review, prepared exhibits for filing, and spent 0.7 hours on preparing and sending all Bates-stamped medical records to the client.  This last entry is questionable.  In my experience, attorneys do not usually include entries for sending Bates-stamped records to the

clients.  However, Ms. Guerrero or her mother may have requested a set of records and the paginated materials were likely to make communications easier.  Thus, I give Ms. Guerrero the benefit of the doubt and do not deduct any time for this potentially unnecessary task.

On May 24, 2012, Ms. Roquemore commenced her review of medical records.  She spent additional time reviewing medical records on May 29-30, 2012.  In total, Ms. Roquemore spent 9.1 hours reviewing the medical records.  The collection of medical records at this point comprised between 400 and approximately 530 pages.[1]  This amount of time seems relatively high, but, again, I give Ms. Roquemore the benefit of the doubt.

On May 25, 2012, Ms. Roquemore received an email from Dr. Steinman, regarding a potential report.[2]  Ms. Roquemore charged 0.1 hours for receiving this email.  She drafted a separate email to her client and charged an additional 0.1 hours.  On that same day, Ms. Roquemore charged 0.3 hours for a telephone conference with her client.  In my experience, attorneys do not usually charge their clients for letting them know that an expert is interested in their case.  Consequently, I deduct the time Ms. Roquemore spent in emailing her client because (a) she could have easily forwarded the email from Dr. Steinman, a task that would have taken seconds to accomplish, and (b) she duplicated her communications in the separate telephone call for which no deduction is taken.

On May 29, 2012, Ms. Roquemore performed a series of tasks.  One of those tasks was the drafting, revising, and finalizing of a retention agreement and distribution agreement.  Ms. Roquemore spent one hour on this aspect.  In my experience, attorneys do not charge for the drafting of a retainer.  The retainer is almost certainly a document with fixed terms that do not need to be drafted,

---

[1] The UCLA records, which were filed as Exhibit 1, contain 418 pages.  The medical records that were eventually filed as exhibits 2 through 9 contain approximately 100 more pages.  Although Ms. Roquemore did not specify which medical records she was reviewing at the end of May 2012, her office did possess records from UCLA and at least five other providers.

[2] The original Fees Decision noted that "attorneys representing petitioners . . . do not need to incur the costs of retaining an expert in flu vaccine / GBS cases."  2014 WL 5335301, at *6 n.9.  This advice is still correct.  The chief special master's special processing unit has resolved many flu vaccine / GBS cases without the need for an expert.  In light of this record, hiring an expert at the outset of a flu vaccine / GBS case is unnecessary in most cases, and is an expense that should be undertaken only after consulting the assigned special master and respondent's counsel in future cases.  However, in Ms. Guerrero's case, I am not deducting any time simply because Ms. Roquemore retained Dr. Steinman.

revised, or finalized for each client.  Thus, I question the accuracy of the entry of one hour for a retainer.  I am aware that some attorneys in the Vaccine Program do not charge for the retainer at all.  Outside of the Vaccine Program, drafting a retainer agreement has not been compensable.  See Morse v. Republican Party of Virginia, 972 F. Supp. 355, 366 (W.D. Va. 1997) (time spent on drafting retainer agreements "is time that normally would not be charged to a client").  I am also aware that some Vaccine Program attorneys have their paralegal send the retainer agreement to the client.  To award some compensation to Ms. Roquemore, I allocate 0.2 hours to her paralegal's time for processing the retainer.

On June 4, 2012, Ms. Roquemore spent 0.1 hours reviewing the file regarding the status of retention and spent 0.1 hours reviewing a letter from her client with the retainer agreement.  Although these tasks are duplicative, Ms. Roquemore may have reviewed the file before the Postal Service delivered the client's letter.  Thus, I do not deduct any time.  However, on this same day, Ms. Roquemore spent 0.1 hours conferring with her paralegal on "processing agreements."  This task appears to be general training of the law firm's employee.  Employee training is part of the general overhead for the law firm and should not be charged to a particular client.  Therefore, I reduce the hours charged by 0.1 hours.

Beginning on June 13, 2012, the paralegal spent time over the next four workdays summarizing medical records.  The total time charged was 16 hours.  I find that this time duplicates the work that Ms. Roquemore spent in reviewing the medical records from May 24, 2012 through May 30, 2012.  Thus, I deduct all this time.

On June 26, 2012 and June 27, 2012, Ms. Roquemore spent a total of 8.3 hours reviewing and revising the medical record summary.  This is one of the more remarkable tasks that Ms. Roquemore claims she performed.  At this time, she had already spent more than nine hours reviewing approximately 500 pages of medical records.  Her paralegal spent the equivalent of two entire workdays, creating a summary of those records.  Now, Ms. Roquemore is saying that she spent an entire additional work day revising a summary.  This charge is excessive.  I deduct the entire amount.[3]

---

[3] In my experience, attorneys frequently delegate to paralegals the task of summarizing medical records initially.  After the paralegal completes a first pass, the attorney should spend some time reviewing the medical records and the summary.  However, Ms. Roquemore did not

On June 28, 2012, Ms. Roquemore's paralegal spent 5.5 hours revising the medical record summary and highlighting critical entries.  This activity is also redundant and unnecessary.  I deduct the entire amount.

On June 29, 2012, Ms. Roquemore started drafting the petition with citations to the medical records.  She spent 3.6 hours on this task.  On July 2, 2012, Ms. Roquemore finished the first draft of the petition, spending an additional 3.7 hours.  Ms. Roquemore's petitions, including the petition filed in this case, contain an unnecessary amount of detail.  Ms. Roquemore could place (and should place) many details in an affidavit that accompanies the petition.  Consequently, for the purposes of drafting a petition, spending more than 7 hours is excessive.  However, the work would be useful for preparing an affidavit.  Thus, I do not adjust Ms. Roquemore's time.

On July 2, 2012, Ms. Roquemore spent 0.3 hours drafting a "retention agreement letter to Dr. Steinman."  Like the retainer agreement between a law firm and its client, the retainer agreement between a law firm and an expert the law firm has retained multiple times is almost certainly a document with terms that are not re-drafted each time.  I eliminate Ms. Roquemore's time and allocate 0.2 hours to the paralegal.  The charge of 0.2 hours for paralegal work in delivering a retainer letter to an expert is consistent with the practice of other law firms.

On July 9, 2012, Ms. Roquemore received an email from her client and responded by email.  Ms. Roquemore separately invoiced each task, charging 0.1 hours to read the message and another 0.1 hours to write a message.  In my experience, attorneys do not separately charge their clients for each aspect of a communication.  From the context, the reading and the writing could have been accomplished in approximately six minutes.  Therefore, I deduct 0.1 hours.

On July 10, 2012, the paralegal made the first of a series of entries for drafting "fee summary monthly narrative[s]."  In my experience, paralegals do not usually create separate entries for the recording of time for work performed in the Vaccine Program, perhaps because attorneys do not bill their clients on a monthly basis.  The paralegal should record the time spent on the task when the underlying task is performed.  Therefore, I am eliminating all the time associated with fee narratives.

---

follow this practice.  Ms. Roquemore's review of the medical records occurred first.  Once the attorney has reviewed the medical records, a separate summarization from the paralegal (and associated review of the summarization) is redundant.

On August 1, 2012, Ms. Roquemore spent time reviewing the file and spent 0.1 hours drafting an email to Dr. Steinman about the status of his report. In my experience, attorneys sometimes delegate the task of monitoring an expert's progress in completing a report to paralegals. However, some attorneys prefer to interact with the expert directly. Consequently, although Ms. Roquemore's work costs more than the work of her paralegal, I do not make any adjustment here.

On August 27, 2012, Ms. Roquemore again inquired about the status of Dr. Steinman's report. Like the entry on July 9, 2012, Ms. Roquemore separated the sending of an email from the reading of an email. However, from the context, it appears that both the email Ms. Roquemore sent and the email she received were short. Thus, Ms. Roquemore could have accomplished both tasks within approximately six minutes. Consequently, I deduct 0.1 hours.

On September 5, 2012, Ms. Roquemore reviewed additional medical records. She also reviewed these records on September 7, 2012 and September 10, 2012. Ms. Roquemore spent, in total, 1.2 hours reviewing these records. Although Ms. Roquemore did not identify the provider, I give Ms. Roquemore the benefit of the doubt and assume that 1.2 hours is a reasonable time to review the records.

On September 13 and 19, 2012, the paralegal spent a total of 2.0 hours summarizing the medical records. This work duplicated Ms. Roquemore's time reviewing the same medical records. Thus, I deduct 2.0 hours of paralegal time.

On October 1, 2012, Ms. Roquemore repeated the email correspondence with Dr. Steinman about his completion of an expert report. Although Ms. Roquemore has charged 0.2 hours, in my experience, these tasks could have been accomplished in approximately six minutes. Therefore, I deduct 0.1 hours.

On October 8, 2012, Ms. Roquemore performed a series of tasks relating to the filing of a petition. Ms. Roquemore spent 0.2 hours filling out the form that is a cover sheet to petitions in the United States Court of Federal Claims. Although paralegals probably could accomplish this task, an attorney's work is not unreasonable. See Bratton v. Thomas Law Firm, PC, 943 F. Supp.2d 897, 909 (N.D. Ind. 2013) (approving time spent by a paralegal on drafting civil cover sheet describing the task as "requiring some degree of legal training"); but see Davis v. Perry, 991 F. Supp.2d 809, 840-41 (W.D. Tex. 2014) (disallowing time a paralegal spent preparing civil cover sheet because it was a clerical task), rev'd on other grounds, 781 F.3d 207 (5th Cir. 2015) (holding that plaintiffs were not prevailing parties). Furthermore, because the cover sheet is one page, an experienced

attorney like Ms. Roquemore probably could complete the cover page in approximately six minutes.  However, I choose to give Ms. Roquemore the benefit of the doubt and accept that she required approximately 10 minutes.  Therefore, I do not deduct any time for preparing a cover sheet.

Ms. Roquemore also spent 0.2 hours drafting a motion for electronic filing. This motion was unnecessary because by October 2012, the court was automatically designating all cases in which an attorney represented a petitioner in the Vaccine Program as electronic.  See Vaccine Rules, Rules Committee Note - 2011 Adoption (Supp. RCFC App. B).  Thus, I deduct 0.2 hours.

Ms. Roquemore spent 1.6 hours drafting a declaration for her client.  The declaration, which was filed with the petition, actually duplicates much of the petition.  The primary difference is that the petition uses the term "Ms. Guerrero," and the declaration uses the term "I."  Copying and pasting from one document to another is not fresh work for which there should be a separate charge. Consequently, I allocate 0.4 hours for paralegal time to make the grammatical changes and allow 0.2 hours for attorney time to review the document.  Otherwise, I deduct 1.4 hours as duplicative.

On October 9, 2012, the paralegal spent 0.9 hours preparing nine "Notice[s] of Filing."  The paralegal prepared a separate notice for each of the nine sets of medical records that Ms. Roquemore anticipated filing.  However, a separate notice of filing is not required.  One notice of filing may include more than one exhibit.  Thus, the paralegal made the task more complicated and time-consuming than needed.  Under the circumstances, the same task of preparing notices of filing could have been accomplished, in my experience, in approximately 18 minutes. Therefore, I deduct 0.6 hours for paralegal time.

For this phase, I eliminate 11.8 hours of attorney time and 23.7 hours of paralegal time.  I find 35.1 attorney hours and 9.7 paralegal hours reasonable.

## 2.    From Filing of Petition to Issuance of 15-week Order

The second phase of the case begins once the petition is filed and ends when I issued a 15-week order on April 9, 2013.  Ms. Roquemore charged 31.2 hours and her paralegal charged 10.0 hours.  Fee Exhibit 2 at 19-34.

On October 15, 2012, Ms. Roquemore performed four tasks and charged 0.1 hours for each of them.  Two of the tasks were reviewing the electronic notice of filing of the petition and reviewing the notice assigning the case to me.  It is

doubtful that six minutes were required to read each notice.  Both notices can be reviewed within approximately six minutes.  Therefore, I deduct 0.1 hours.  I find the remaining activities on this day reasonable.

Also on October 15, 2012, the paralegal charged 3.6 hours for, essentially, filing nine exhibits.  More specifically, the paralegal charged 0.4 hours for performing a set of four tasks for nine exhibits.  The four tasks were: scanning and Bates-stamping the exhibit, revising and finalizing the notice of filing, conducting the ECF entry, and updating the medical records binder.  The paralegal charged 0.1 hours for each task.  These tasks are clerical and do not require the skills of a paralegal.  I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii, 18 F. Supp.3d 1047, 1062-63 (D. Haw. 2014), appeal docketed, No. 14-16036 (9th Cir. May 28, 2014); Bratton, 943 F. Supp.2d at 908; Ryan v. Allied Interstate, Inc., 882 F. Supp.2d 628, 636-37 (S.D.N.Y. 2012); Dimatteo v. Sec'y of Health & Human Servs., No. 10-556V, 2014 WL 1509320, at *7 (Fed. Cl. Spec. Mstr. Mar. 27, 2014).  Thus, I find these charges excessive and remove the 3.6 hours.[4]

For a similar reason, the paralegal's charge of 1.8 hours for filing exhibits 10-24 on October 17, 2012, is also removed.  The tasks are administrative and, therefore, should not have been charged.

On October 17, 2012, Ms. Roquemore charged nearly one hour for six tasks.  One of these tasks is 0.2 hours for drafting a statement of completion.  The statement of completion is two sentences, comprised of 26 words.  It is also the same as the statement of completion Ms. Roquemore has filed in other cases.  In my experience, some attorneys do not usually charge for the filing of this routine document.  Some law firms delegate this task to paralegals.  The paralegal time is a reasonable compromise.  Thus, I transfer 0.2 hours of attorney time to paralegal time.

On November 5, 2012, the paralegal again charged 0.1 hours for a monthly fee narrative.  This activity is unnecessary as a separate event.  Therefore, I deduct 0.1 hours.

---

[4] Separately, the paralegal's work in scanning exhibits 1-9 for filing duplicates, at least in part, the work performed on April 4, 2012, when the paralegal prepared five sets of medical records for filing and mailed Bates-stamped documents to the client.  Moreover, it seems unlikely that "revising and finalizing" nine notices of filing took nearly one hour (0.9 hours), when each notice of filing is one sentence long.  Likewise, it seems unlikely that "updating" a trial binder also took nearly one hour for nine sets of medical records.

On November 5, 2012, Ms. Roquemore separately charged for drafting an email and reviewing an email to her client about medical records. Paralegals are qualified to monitor the status of submissions of medical records. Turpin, 2008 WL 5747914, at *6. Thus, Ms. Roquemore should have delegated this task to a professional who charges a lower rate. In addition, the context suggests that the communications were relatively simple and that both the sending and the receiving could have been accomplished in approximately six minutes. Therefore, I deduct 0.2 hours of attorney time and add 0.1 hours of paralegal time. Similarly, on November 9, 2012, Ms. Roquemore spent 0.2 hours in a telephone conversation with her client about medical records and the statement of completion. Paralegals are qualified to discuss the status of medical records with clients. Thus, I, again, deduct 0.2 hours for attorney time and add 0.2 hours of paralegal time.

On November 15, 2012, Ms. Roquemore spent 0.8 hours reviewing the new guidelines for "any [e]ffect on this case." An attorney is required to remain current about legal developments and should not charge the client for this task. Torday v. Sec'y of Health & Human Servs., No. 07-372V, 2011 WL 2680687, at *5-6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). It does not matter that Ms. Roquemore added "on this case."[5]

On November 26, 2012, Ms. Roquemore charged 0.9 hours for reviewing updated records. This activity is reasonable. She also charged 0.1 hours for revising and finalizing the statement of completion. This activity is not reasonable. She had "drafted" the statement of completion on October 17, 2012. Therefore, I deduct 0.1 hours of attorney time. Similarly, I also deduct the 0.2 hours the paralegal charged on November 27, 2012.[6]

Beginning on November 29, 2012, the parties began discussions that eventually led to a settlement of the case. Ms. Roquemore's roles were to counsel her client about the strength and weaknesses of the case, to calculate a reasonable demand, to relay information from the Secretary back to her client, and to attempt

---

[5] In at least three other cases, Ms. Roquemore charged approximately one hour for reviewing the new guidelines in November 2012. See Wyler, No. 09-803V, Roberson, No. 11-670V, and Buchko, 12-96V. It seems doubtful that Ms. Roquemore was required to review the guidelines four separate times.

[6] In total, Ms. Roquemore and her firm charged approximately $200 for the statement of completion. This amount contrasts with the practice of some firms that do not charge at all, and the practice of some firms who use a paralegal and usually charge less than $50 for the statement of completion.

to persuade the Secretary to increase the amount of any offer.  From November 29, 2012, when settlement discussions started, through April 8, 2013, when Ms. Roquemore reviewed the 15-week order, Ms. Roquemore charged 25.6 hours.  The paralegal spent an additional 1.6 hours.

Assessing the reasonableness of 25.6 hours of attorney time to settle this case is somewhat more challenging due to the lack of information.  See Torday, 2011 WL 2680687, at *7.  Ms. Roquemore has generally described the topic of the communication with her client, but attorney-client privilege protects the actual content.  Cf. Avgoustis v. Shinseki, 639 F.3d 1340, 1344 (Fed. Cir. 2011) (ruling that Court of Appeals for Veterans Claims did not err in refraining from awarding attorneys' fees when the attorney's entries regarding communications with a client were vague).  Similarly, Ms. Roquemore's timesheets do not contain the exact details of communications from the Secretary.  Thus, compared to the preparation of a statement of completion, which was a filed document, there is understandably less information about what Ms. Roquemore was doing in the settlement discussions.

Nevertheless, there remains some basis for evaluating the reasonableness of the charges during settlement discussions.  Ms. Roquemore's pattern of charging separately for both the sending and receiving of an email continued.  Examples include entries on November 29, 2012 (twice), December 6, 2012 (twice), December 11, 2012, December 17, 2012, January 9, 2013, February 19, 2013, and February 25, 2013.  The context for these entries suggests that the conversation was relatively brief and could have been accomplished in six minutes (0.1 hours), not the 12 minutes (0.2 hours) Ms. Roquemore charged.[7]  The timesheets also reveal that Ms. Roquemore performed tasks that she could have delegated to a paralegal or other support person.  For example, at the end of February 2013, Ms. Roquemore engaged in three email conversations about scheduling a meeting between her client and her.  Similarly, the paralegal spent time preparing fee narratives and creating binders.

Apart from the timesheets, my experience in overseeing more than one hundred cases that have settled and reviewing the associated requests for attorneys' fees gives me an understanding about the settlement process.  Saxton, 3 F.3d at 1521 ("[S]pecial masters are also entitled to use their prior experience in reviewing

---

[7] By way of contrast, on February 21, 2013, Ms. Roquemore reviewed an email from her client about a meeting regarding settlement (0.1 hours) and drafted an email about how the presence of Ms. Guerrero's mother could affect the attorney-client privilege (0.1 hours).  The guidance about the attorney-client privilege would naturally require some additional time.

fee applications.") (citations omitted).  The participation of an attorney from the
Department of Justice contributes to my expectations about the amount of time for
settlement.  If two private parties, who are relatively unfamiliar with a court, spent
a long time negotiating the settlement, then evaluating whether the plaintiff was
too demanding or the defendant was too recalcitrant might be difficult.  However,
the Department of Justice attorneys always represent the Secretary.  Experienced
attorneys supervise the trial attorney's negotiation of any tentative settlement.
Only higher ranking attorneys possess the authority to agree to pay compensation.
See 28 C.F.R. Part O, Subpart Y, App. (Only the authorized representative of the
Attorney General has the authority to approve a tentative settlement agreement);
see also Tompkins v. Sec'y of Health & Human Servs., 117 Fed. Cl. 713, 722
(2014) (Settlement stipulation not legally enforceable when lacking signatures of
authorized representatives from United States Department of Health and Human
Services and United States Department of Justice, as required by RCFC, App. B,
Vaccine Rule 11(b)). This structure tends to foster relative consistency in the way
that the respondent both litigates and settles cases.

In my experience, attorneys who are knowledgeable about the Vaccine
Program have negotiated a settlement in similar cases in approximately 10-15
hours.  Attorneys with much less experience than Ms. Roquemore negotiated a
resolution is approximately 22 hours.  I find these reports to be useful metrics in
determining how much time is reasonable for the settlement of Ms. Guerrero's
case.

In my discretion, I credit 20.0 hours of Ms. Roquemore's time and 0.8 hours
of the paralegal time.  This results in a deduction of 5.6 hours of attorney time and
0.8 hours of paralegal time.

For this phase, I credit 24.0 of the 31.2 requested attorney hours and 4.0
hours of the 10.0 requested paralegal hours.

### 3. From Issuance of 15-Week Order to Entry of Judgment

From the issuance of the 15-week order to the entry of judgment, the
demands on the attorney representing a petitioner are relatively few. The purpose
of the 15-week order is to allow officials within the United States government who
possess the authority to bind the United States to review and to authorize a
tentative settlement.  See Tompkins v. Sec'y of Health & Human Servs., No. 10-
261V, 2013 WL 3498652, at *3 (Fed. Cl. Spec. Mstr. June 21, 2013), mot. for rev.
denied, 117 Fed. Cl. 713, 722 (2014).  Once the authorized representative of the

Attorney General approves the proposed agreement, the trial attorney for the Secretary sends the stipulation to the petitioner's attorney.  The petitioner's attorney must obtain a signature from the petitioner, sign the document herself, and transmit the signed stipulation back to the Secretary's attorney, who signs it and files it.  Many law firms, in my experience, delegate the processing of this paperwork to a paralegal.

In this phase, Ms. Roquemore has charged a total of 5.1 hours and her paralegal charged 2.8 hours.  However, during this phase, Ms. Roquemore, appropriately, started working on her application for attorneys' fees.  Before the entry of judgment, she spent 1.0 hour and her paralegal spent 1.5 hours on work relating to attorneys' fees.  After these times are moved to the next phase for purposes of organization, the time actually charged for wrapping up the merits case was 4.1 hours for Ms. Roquemore and 1.3 hours for the paralegal.

Again, the question to be asked is whether this is a reasonable amount of time?  For some entries, the charges are excessive.

On April 16, 2013, Ms. Roquemore spent 0.2 hours performing two tasks. She noticed that pursuant to an old scheduling order, a status report was due.  She also reviewed the 15-week order (for a second time) and read that all existing deadlines were cancelled.  Ms. Roquemore, thus, "[d]etermine[d] that Status Report was no longer necessary."  Should an experienced attorney spend approximately 12 minutes to figure out that after the parties have already reported that the case is settled, the parties do not need to file a status report about settlement?  Although it seems doubtful that this much time was required, I give Ms. Roquemore the benefit of the doubt.

In this period, the paralegal continued to charge separately for fee narratives. As explained above, these charges are not reasonable.

On May 7, 2013, Ms. Roquemore spent 0.3 hours communicating with her client by email about the status of settlement.  In my experience, paralegals typically handle these routine calls and, thus, Ms. Roquemore could have delegated the task to someone who charges less.  However, although Ms. Roquemore has not indicated that her client needed special attention, I give Ms. Roquemore the benefit of the doubt and do not reallocate time from her to her paralegal.

On June 11, 2013, Ms. Roquemore made several entries regarding the 240-day notice.  The 240-day notice is a routine document that special masters issue in every case to inform the petitioners that they are permitted to withdraw

from the Vaccine Program.  Ms. Roquemore spent 0.1 hours reviewing it and, then, spent another 0.1 hours drafting an email to her client with an explanation.  Given the routine nature of this notice, Ms. Roquemore could not have spent 0.1 hours reviewing it.  Her review can be consolidated with the email to her client.  Thus, 0.1 hours is an excessive charge and is eliminated.

In response to the 240-day notice, Ms. Roquemore spent 0.3 hours on "draft[ing] notice of intent to continue with case.  Revise and Finalize."  In approximately 18 minutes, what did Ms. Roquemore draft, revise, and finalize?  Excluding the caption and signature block, the notice to continue is one sentence, containing 25 words.  Moreover, the notice of intent to continue is not even fresh work as Ms. Roquemore has used the same wording in other cases.

The charges associated with the notice to remain in the program did not stop there.  Ms. Roquemore also charged 0.1 hours to direct her paralegal to prepare the "Notice for ECF filing and to file it."  The paralegal, in turn, spent 0.1 hours preparing the notice to continue and spent another 0.1 hours filing it.  One wonders after a lawyer spent 0.3 hours "drafting, revising, and finalizing" a one-sentence document, how a paralegal could have spent an additional 0.1 hours preparing it for filing.

A reasonable amount of time concerning a 240-day notice for an experienced attorney is 0.1 hours.  Another 0.1 hours of paralegal time is also reasonable.  Thus, 0.5 hours of Ms. Roquemore's time is excessive and 0.1 hours of paralegal time is excessive.

On June 24, 2013, Ms. Roquemore received the stipulation and spent 1.0 hour on that day.  Reasonable tasks included 0.2 hours reviewing it and 0.2 hours communicating with her client about it.  However, Ms. Roquemore spent 0.2 hours "draft[ing] letter to L. Englund [the Secretary's attorney] with executed Settlement Stipulation and request it get filed after all signatures.  Revise and finalize."  Ms. Roquemore also spent 0.1 hours drafting an email to Ms. Englund, requesting a physical address for mailing.  Given that Ms. Roquemore has settled cases with the Secretary before, it is not clear why Ms. Roquemore needed to learn the physical address of the Department of Justice, which has not moved.  In any event, a secretary could have carried out this routine correspondence.  Thus, 0.3 hours is eliminated as excessive.

On July 3, 2013, I issued a decision awarding compensation based upon the parties' stipulation.  On July 9, 2013, Ms. Roquemore spent 0.1 hours reviewing

the decision.  This time is reasonable.  She also spent 0.3 hours "draft[ing] joint notice to waive review.  Revise and Finalize."  This document is two sentences, containing 45 words.  Again, it is not fresh work because Ms. Roquemore has filed the same joint notice in other cases.  Ms. Roquemore's time on this document is not reasonable.  However, I allow the 0.1 hours that Ms. Roquemore spent in emailing the Secretary's counsel requesting authorization to file the joint notice not to seek review.  Because the United States had already agreed to the settlement in the 15-week order process, consulting the Department of Justice trial attorney was likely to be a routine task that could be performed by a paralegal.  However, an attorney-to-attorney communication is also reasonable.

On July 11, 2013, Ms. Roquemore performed two tasks associated with the joint notice not to seek review.  She received an email from Ms. Englund, authorizing its filing and she instructed her paralegal to file it.  A reasonable amount of time for both tasks is 0.1 hours.  Thus, I deduct 0.1 hours as excessive.  The paralegal spent 0.1 hours preparing the joint notice not to seek review.  That amount of time is reasonable.  However, the CM/ECF filing process is administrative and should not be charged.  Thus, I deduct 0.1 hours for filing.

After Ms. Roquemore filed the joint notice not to seek review, the Clerk's Office entered judgment.  On July 15, 2013, Ms. Roquemore spent 0.1 hours reviewing the judgment and this time is reasonable.  She also spent 0.3 hours "draft[ing] election to accept judgment.  Revise and Finalize."  This document is one sentence, comprised of 36 words.  Again, this is not fresh work.  Ms. Roquemore has filed the same election in other cases.  The charge of 0.3 hours is excessive and I deduct this time.  I allow 0.1 hours for the paralegal to draft the election, but not 0.1 hours for the paralegal to file it.

Therefore, in this phase, I award 2.6 attorney hours and 0.7 paralegal hours.

## 4.    Preparing Initial Attorneys' Fees Submission

The next phase concerns the work Ms. Roquemore and her paralegal performed in requesting attorneys' fees.  As noted above, 1.0 hour of attorney time and 1.5 hour of paralegal time was performed before the entry of judgment.  After judgment, Ms. Roquemore spent another 6.1 hours and her paralegal spent 5.1 hours.  The total time spent in preparing the application for attorneys' fees is 7.1 attorney hours and 6.6 paralegal hours.

On April 17, 2013, the paralegal started drafting the fee application.  The 1.2 hours on this task is reasonable.  The paralegal also spent 0.3 hours drafting a

declaration for Dr. Steinman in which Dr. Steinman explained the basis for his requested hourly rate.  Although Ms. Roquemore has submitted similar declarations from Dr. Steinman in other cases, see Mueller, 06-775V and Brown, 09-426V, the declaration in Ms. Guerrero's case contains some information unique to her case.  The amount of time the paralegal charged (0.3 hours) is consistent with modifying an already existing document.  Therefore, I do not reduce the time.

On May 30, 2013, Ms. Roquemore emailed Dr. Steinman about the status of his invoice.  In my experience, paralegals are capable of requesting an invoice from an expert.  Thus, 0.1 hour is allocated to paralegal, not attorney, time.

Similarly, on June 4, 2013, Ms. Roquemore charged for communicating with her client about litigation expenses.  Her paralegal could have performed this task.  I adjust the time accordingly.

On July 16-17, 2013, Ms. Roquemore communicated with her paralegal about the difference between damages included in the stipulation and litigation expenses.  Arguably, this explanation trains the paralegal about the duties and such training should be allotted to general firm overhead, not charged to a client.  However, I give Ms. Roquemore the benefit of the doubt and assume that the particular training related to this case specifically and that a client would have paid for this charge.  I do not make any adjustments.

On August 8, 2013, Ms. Roquemore received an email from Ms. Englund requesting the petitioner's social security number.  Because the email came to Ms. Roquemore, I accept the 0.1 hours she charged for this task.  However, the actions in response (emailing the client and emailing Ms. Englund) could have been performed by a paralegal in approximately six minutes.  Therefore, I adjust the time accordingly.

On August 14, 2013, the paralegal charged time for creating a fee narrative.  This is excessive and is eliminated.

On August 26, 2013, the paralegal spent 0.1 hours changing an address on a letter to the client Ms. Roquemore had written.  This ministerial task is secretarial for which there should not be a charge.  I eliminate this time.

On October 21, 2013, Ms. Roquemore charged 0.3 hours for emailing Dr. Steinman about his invoice.  A paralegal could have accomplished the same in 0.2 hours.  Thus, I adjust the time accordingly.

On November 14, 2013, Ms. Roquemore performed several activities. The tasks included spending 0.3 hours drafting a "Joint Notice to Waive Review of Decision regarding Fees." This is problematic for several reasons. First, as this decision reflects, the parties never reached an agreement regarding attorneys' fees. Thus, if Ms. Roquemore actually spent any time drafting this document, the time spent was premature. Appropriate billing judgment would suggest that the attorney should not bill the client for work that was not useful. Second, much like the Joint Notice to Waive Review of the merits decision, the notice not to seek review for attorneys' fees is usually a single sentence. Thus, it seems very doubtful that Ms. Roquemore could have spent approximately 18 minutes writing it. Moreover, the notice not to seek review can be copied and pasted from one case to another case. The repetition of work from one case to another further calls into question the accuracy of Ms. Roquemore's assertion that she spent 18 minutes drafting this document. Finally, an attorney's skill is not needed for drafting this routine document. If the filing of a joint notice not to seek review of a decision on attorneys' fees were needed, a paralegal or a secretary could have accomplished this task. I deduct all the time associated with this entry.

Ms. Roquemore also spent 0.3 hours drafting a letter to Dr. Steinman regarding expert fees and costs. On November 14, 2013, Ms. Roquemore was still waiting for an invoice from Dr. Steinman. In my experience, paralegals are capable of requesting that an expert provide an invoice and, further, this communication could have been accomplished in approximately six minutes. I recognize that the firm has requested an invoice previously. Thus, the paralegal may have spent additional time cajoling Dr. Steinman to provide an invoice. I allow an extra six minutes for this aspect.

On November 18, 2013, Ms. Roquemore again spent time requesting an invoice from Dr. Steinman. She has stated that it took approximately 18 minutes to determine that Dr. Steinman had not sent an invoice and to email him, requesting an invoice. While it seems that these tasks could have been accomplished in approximately 12 minutes, I accept Ms. Roquemore's representation that she made a very thorough search to determine that the invoice, for which the firm had been waiting for months, had not arrived. In addition, I find that Dr. Steinman's failure to respond to previous requests makes an involvement of an attorney (not a paralegal) reasonable. Therefore, I do not adjust the time.

On November 26, 2013, the paralegal filed the fee application and associated exhibits and spent 1.1 hours on filing aspects. The filing of documents is a clerical task for which a charge is not reasonable. Thus, I deduct this time.

In sum, for this phase, I deduct 0.3 hours of attorney time and 0.9 hours of paralegal time. The remaining 6.8 attorney hours and 5.7 paralegal hours are reasonable.

### 5.   Fees for Fees

The November 26, 2013 motion for attorneys' fees concluded that phase. After that submission, the Secretary objected and this objection prompted additional work by Ms. Roquemore, totaling $9,991.40. Fee Exhibit 24; Pet'r's Reply, filed Feb. 26, 2014, at 19. The September 23, 2014 Fees Decision accepted the full amount requested. 2014 WL 5335301, at *8.

The Court's March 4, 2015 Opinion vacated the September 23, 2014 Fees Decision and required a redetermination of attorneys' fees. The Court's action has reopened the reasonableness of fees during the phase in which the parties were disputing fees. See N.H. ex rel. Castaneda v. Sec'y of Health & Human Servs., No. 11-749V, 2012 WL 1722346, at *1 (Fed. Cl. Spec. Mstr. Apr. 24, 2012).

A line-by-line review of the work claimed by Ms. Roquemore and her paralegal probably would reveal unreasonable charges. However, my initial estimate was that Ms. Roquemore's work in the fees for fees stage was reasonable. After the Court's remand, I continue to find that Ms. Roquemore's work was within the bounds of reasonableness. Therefore, I exercise my discretion to refrain from conducting a line-by-line analysis of the fees-for-fees stage and do not deduct any time from Ms. Roquemore's timesheets.

### C.   Summary

After the Court's determination that my citing median awards in comparable cases was erroneous, I have undertaken a fresh analysis, conducted on a line-by-line basis and without regard for the earlier determination. This evaluation shows a lack of billing judgment in several respects:

- Ms. Roquemore charged time for producing some documents that might be appropriate if she were creating the document. However, Ms. Roquemore did not actually create the document in Ms. Guerrero's case. Ms. Roquemore simply modified a document that already existed from previous cases. Examples include the retainer with her client, the retainer with her expert, the statement of completion, and the joint notice not to seek review. Ms. Roquemore should not charge the amount of time for

creating a new document when an old version exists.  <u>Broekelschen v. Sec'y of Health & Human Servs.</u>, 102 Fed. Cl. 719, 729-30 (2011).

- Ms. Roquemore appears to charge at least 0.1 hours for any task, even if multiple tasks were performed in succession.  An example is charging, on October 15, 2012, separately for reading a notice of assignment and notice of filing.

- Ms. Roquemore performed tasks that a paralegal could have performed for and, in my experience, often do perform for attorneys in the Vaccine Program.

- Ms. Roquemore's paralegal duplicated work, particularly in regard to reviewing and summarizing medical records.

- Ms. Roquemore's paralegal charged for clerical / administrative tasks for which no time should be charged.

I find that a reasonable amount of attorneys' time is 68.5 hours and a reasonable amount of paralegal time is 20.1 hours.

I have performed the appropriate multiplication in the lodestar formula.  The result is that a reasonable amount of attorneys' fees through the November 26, 2013 application for attorneys' fees is $26,830.00.[8]  I also award $9,991.40 for work litigating fees.[9]

A reasonable amount of attorneys' fees for work performed before the motion for review is $36,821.40.  The Original Fees Decision included $12,820.67 in attorneys' costs and $431.64 in Ms. Guerrero's own costs.  Because these figures have not been included in a judgment, I incorporate them into this decision.

---

[8] For this work, the original Fee Decision awarded $25,535.90.  My award in the present Remand Decision increases the amount by approximately $1,000, which is an increase of approximately five percent.

[9] If the approximately ten thousand dollars in fees for fees is included in the baseline, then the present award is an increase of approximately four percent.

### III.    Conclusion

The Clerk's Office is instructed to enter judgment in the amount of **$50,073.71**.  The amount of $49,642.07 shall be payable to petitioner and petitioner's attorney.  The amount of $431.64 shall be payable to Ms. Guerrero alone.  I also instruct the Clerk's Office to transmit this Remand Decision to the presiding judge in accord with Vaccine Rule 28.1(a).

**IT IS SO ORDERED.**

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master

**Start to Petition**

| Date | Summary of Activity | Adjustment to Attorney Time | Adjustment to Paralegal Time |
|------|---------------------|-----------------------------|------------------------------|
| 3/21/2012 | Emails to Client | -0.30 | 0.20 |
| 5/25/2012 | Emails regarding Dr. Steiman | -0.10 | 0.00 |
| 5/29/2012 | Retainer | -1.00 | 0.20 |
| 6/4/2012 | Paralegal training | -0.10 | 0.00 |
| 6/13/2012 | Summarizing medical records | 0.00 | -16.00 |
| 6/27/2012 | Review of summary | -8.30 | 0.00 |
| 6/28/2012 | Revising Medical Record Summary | 0.00 | -5.50 |
| 7/2/2012 | Retainer Dr. Steinman | -0.30 | 0.20 |
| 7/9/2012 | Writing and reading email | -0.10 | 0.00 |
| 7/10/2012 | Monthly Fee Narratives | 0.00 | -0.60 |
| 8/27/2012 | Writing and reading email | 0.10 | 0.00 |
| 9/13/2012 | Summarizing medical records | 0.00 | -2.00 |
| 10/1/2012 | Writing and reading email | -0.10 | 0.00 |
| 10/8/2012 | Motion for electronic filing | -0.20 | 0.00 |
| 10/8/2012 | Client's Declaration | -1.40 | 0.40 |
| 10/9/2012 | Multiple Notices of Filing | 0.00 | -0.60 |
| | Total: | -11.80 | -23.70 |

| | Attorney | Paralegal |
|------|----------|-----------|
| Requested Number of Hours | 46.90 | 33.40 |
| Adjustments (above) | -11.80 | -23.70 |
| Awarded Number of Hours | 35.10 | 9.70 |

**Petition to 15 Week Order**

| Date | Summary of Activity | Adjustment to Attorney Time | Adjustment to Paralegal Time |
|------|---------------------|-----------------------------|------------------------------|
| 10/15/2012 | Reviewing two CM/ECF notices | -0.1 | 0.0 |
| 10/15/2012 | Scanning exhibits | 0 | -3.6 |
| 10/17/2012 | Filing exhibits 10-24 | 0 | -1.8 |
| 10/14/2012 | Statement of Completion | -0.2 | 0.2 |
| 11/5/2012 | Fee Narrative | 0 | -0.1 |
| 11/5/2012 | Medical Record Collection | -0.2 | 0.1 |
| 11/9/2012 | Conversation with Client about medical records | -0.2 | 0.2 |
| 11/15/2012 | Reviewing new guidelines | -0.8 | 0 |
| 11/26/2012 | Revising Statement of Completion | -0.1 | 0 |
| 11/27/2012 | Statement of Completion | 0 | -0.2 |
| 12/3/2012 | Settlement Negotiations | -5.6 | -0.8 |
|  | Total: | -7.2 | -6.0 |

|  | Attorney | Paralegal |
|--|----------|-----------|
| Requested Number of Hours | 31.2 | 10.0 |
| Adjustments (above) | -7.2 | -6.0 |
| Awarded Number of Hours | 24.0 | 4.0 |

**15 Week Order to End of Merits Case**

| Date | Summary of Activity | Adjustment to Attorney Time | Adjustment to Paralegal Time |
|------|--------------------|-----------------------------|------------------------------|
| 5/6/2013 | Fee narrative | 0 | -0.3 |
| 6/11/2013 | 240 day notice | -0.5 | -0.1 |
| 6/24/2013 | Correspondence | -0.3 | 0 |
| 7/9/2013 | Joint Notice not to Seek Review | -0.3 | 0 |
| 7/11/2013 | Joint Notice not to Seek Review | -0.1 | -0.1 |
| 7/15/2013 | Election | -0.3 | -0.1 |
| | Total: | -1.5 | -0.6 |

| | Attorney | Paralegal |
|--|----------|-----------|
| Requested Number of Hours | 4.1 | 1.3 |
| Adjustments (above) | -1.5 | -0.6 |
| Awarded Number of Hours | 2.6 | 0.7 |

**Attorney's Fees**

| Date | Summary of Activity | Adjustment to Attorney Time | Adjustment to Paralegal Time |
|------|---------------------|------------------------------|-------------------------------|
| 5/30/2013 | Requesting Invoice from Dr. Steinman | -0.1 | 0.1 |
| 6/4/2013 | Communicating with client over litigation fees | -0.1 | 0.1 |
| 8/8/2013 | Emails regarding SSN | -0.2 | 0.1 |
| 8/14/2013 | Fee Narratives | 0 | -0.3 |
| 8/26/2013 | Changing address | 0 | -0.1 |
| 10/21/2013 | Requesting Invoice from Dr. Steinman | -0.3 | 0.2 |
| 11/14/2013 | Joint Notice Not to Seek Review | -0.3 | 0 |
| 11/14/2013 | Requesting Invoice from Dr. Steinman | -0.3 | 0.2 |
| 11/26/2013 | CM / ECF filing | 0 | -1.1 |
| | Total: | -0.3 | -0.9 |

| | Attorney | Paralegal |
|------|----------|-----------|
| Requested Number of Hours | 7.1 | 6.6 |
| Adjustments (above) | -0.3 | -0.9 |
| Awarded Number of Hours | 6.8 | 5.7 |

**Summary**

| Phase | Adjustment to Attorney Time | Adjustment to Paralegal Time |
|---|---|---|
| Start to Petition | -11.8 | -23.7 |
| Petition to 15-Week Order | -7.2 | -6 |
| Wrap Up of Merits Case | -1.5 | -0.6 |
| Attorneys' Fees | -0.3 | -0.9 |
| Total: | -20.8 | -31.2 |

| | Attorney | Paralegal |
|---|---|---|
| Requested Number of Hours | 89.3 | 51.3 |
| Adjustments (above) | -20.8 | -31.2 |
| Awarded Number of Hours | 68.5 | 20.1 |
| Hourly Rate | $355.00 | $125.00 |
| Subtotal: | $24,317.50 | $2,512.50 |

Total: $26,830.00